# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANGELA J. HANNEGAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-12-49-W |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Angela J. Hannegan ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and 636(b)(3). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommend that the Commissioner's decision be reversed and matter remanded for further proceedings.

## Administrative Proceedings

Plaintiff initiated these proceedings by filing applications in May 2008 seeking disability insurance benefits and supplemental security income payments [Tr. 234 - 240 and 241 - 243]. She claimed her depressive and bipolar disorders resulted in difficulty in "handling and interacting with people" and had become disabling as of May 2008 [Tr. 346].[1]

---

[1] Unless otherwise indicated, quotations in this report are reproduced verbatim.

Plaintiff's claims were denied and, at her request, an Administrative Law Judge ("ALJ") conducted a hearing in 2009 where Plaintiff, who was represented by a Professional Social Security Disability Representative, and a vocational expert testified [Tr. 23 - 51, 139 - 141, and 153]. The ALJ subsequently found Plaintiff retained the capacity to perform work which was available in the national economy and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 104 - 112].

The Appeals Council of the Social Security Administration granted Plaintiff's request for review of that determination [Tr. 119 - 121]. The Appeals Council then vacated the decision and remanded the case to an ALJ to further evaluate the severity of Plaintiff's migraine headaches and to obtain additional evidence not only with regard to those headaches but also regarding her depressive and borderline personality disorders. *Id.*

Following consultative examinations and the submission of additional evidence, a second hearing was then held in May 2011 before the same ALJ who had entered the first decision [Tr. 52 - 96]. Testimony was given by Plaintiff – who was present with the same professional representative, – a medical expert, a psychological expert, and a vocational expert. *Id.* In his September 2011 decision, the ALJ once again found Plaintiff retained the capacity to perform work which was available in the national economy and was not disabled within the meaning of the Social Security Act [Tr. 11 - 22]. The Appeals Council declined Plaintiff's request for review [Tr. 1 - 5], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's "factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.*

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving she has one or more severe impairments. 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then,

if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

**Plaintiff's Claims of Error**

Plaintiff maintains the ALJ failed to properly assess various opinions of her treating physician with regard to her mental impairments and likewise failed to properly evaluate the effect of her migraine headache impairment on her ability to work. Remand is recommended because the evidence of record does not support the ALJ's findings in connection with Plaintiff's severe migraine headaches.

**Analysis**

In his first decision, the ALJ found "[t]he medical evidence of record does not show the following physical conditions are severe and/or that they have meet the durational requirements: headaches[.]" [Tr. 107]. The Appeals Council, however, found "the evidence of record indicates that the claimant was seen numerous times in the emergency room for treatment of migraine headaches over the course of more than 12 months since the alleged onset date." [Tr. 119]. The Council concluded remand was required in order that the ALJ could further evaluate the severity of Plaintiff's migraine headaches. *Id.*

In his second decision – the subject of this appeal – the ALJ found Plaintiff's migraine headache impairment significantly limited her ability to perform basic work activities and, accordingly, was a severe physical impairment [Tr. 16]. Because the impairment did not

meet or medically equal the severity of a listed impairment, the ALJ proceeded to evaluate the evidence of record and to assess Plaintiff's credibility in order to formulate her residual functional capacity ("RFC").[2]

As to the medical evidence of Plaintiff's migraine headaches, the ALJ noted that "[s]ince prior to the alleged onset date of May 29, 2008, the claimant has been followed with hospital emergency rooms treatments for recurrent headaches and has been prescribed the anti-migraine/anti-convulsive medication, Topamax (Exs. 1F through 19F)." [Tr. 13]. The ALJ further noted Plaintiff had undergone an October 2010 consultative neurological evaluation by Dr. Sherman Lawton in which she was found to be neurologically intact and to have "a subjective complaint of headache" with no physical limitations [Tr. 15, 688, and 690 - 697]. He then concluded Plaintiff retained the capacity to perform a full range of work at all exertional levels but had several mental limitations and – of significance with regard to the migraine headache impairment – "would be absent from the workplace, on average, more than ½ day per month, but less than 1 day per month." [Tr. 17].

The ALJ went on to state that in making these findings he had considered Plaintiff's symptoms as she had described them in her testimony:

> [S]ince May 29, 2008, she has been unable to engage in substantial gainful activity secondary to frequent recurrent migraine headaches occurring approximately 3 times a month and lasting 2 days or more. The claimant also testified that her headaches typically involve head pain; extreme nausea; and extreme sensitivity to light, sound, and smell. She also testified that when

---

[2]Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

> experiencing a migraine she stays bed all day with an icy washcloth over her eyes and avoid doing anything.

*Id.* The ALJ then provided the following evaluation of the credibility of Plaintiff's statements with regard to the symptoms of her migraine headaches:

> As shown above, since prior to May 29, 2008, the claimant has been seen at a hospital emergency room for treatment of her recurrent migraine headaches (Exs. 2F, 10F, and 17F). There is no showing that the claimant's migraine headaches result from a brain lesion or some other neurological abnormality. Contrary to the claimant's testimony, there is no showing that her migraine headaches are persistently accompanied nausea; sensitivity to light, sounds, smells; or other complicating factors. Contrary to the claimant's testimony that she has sought treatment at the emergency rooms because her headaches were of extreme severity and intensity, the undersigned notes that the emergency room treatment notes frequently described the claimant's migraine headaches as typical headaches and frequently described her as not exhibiting signs of acute distress (Exs. 2F and 17F). The undersigned notes that emergency room treatments did not result in hospital admissions or long-term follow-up treatments. The neurological expert testified that his review of the emergency room treatment notes and the other medical evidence of record showed that the claimant experiences a severe migraine headache on the average of less than one day per month.
> 
> It was until December 2010 that the claimant found her migraine headaches to be of such severity or intensity as to require her to seek ongoing medical management from family treatment specialists or other medical specialist (Ex. 18F). After initiating treatment with the family treatment specialist, early as January 2011 the claimant reported that she was experiencing some improvement of severity, intensity, and frequency of her migraine headaches (Ex. 18F page 7). The family practice specialist persistently described the claimant as not exhibiting signs of acute distress (Ex. 18F). The available medical evidence shows that the claimant continued her follow-up treatments with family practice specialists into April 2011. At no point have the family practice specialists described the claimant's migraine headaches as totally disabling.
> 
> Early in the treatment of the claimant's migraine headaches, her nicotine consumption was identified as a probable aggravating factor and she was instructed to stop smoking (Ex. 2F pages 37 and 40). Although subsequent to

6

>January 2011 the claimant has continued to experience some migraine headaches, the available evidence shows that the overall severity, intensity, and frequency of the claimant's migraine headaches have remained very significantly improved (Ex. 18F).

[Tr. 18 - 19].

The ALJ then generally discredited Plaintiff's overall credibility because of evidence indicating she had performed some work activity despite her testimony that she had not worked since May 29, 2008 [Tr. 20]. Additionally, he found "the claimant's testimony and reports of her daily activities shows that she remains quite active and functional (Ex. 8E)." *Id.* Finally, in addressing the opinion evidence of record, the ALJ stated he had given great weight to the opinions of James H. Haynes, M.D., the neurological medical expert who testified at the administrative hearing [Tr. 11, 20, and 68 - 74].

In seeking reversal of the ALJ's decision and remand of the matter for further proceedings [Doc. No. 14, p. 28], Plaintiff maintains the ALJ improperly discounted her testimony regarding the frequency, duration, and severity of her migraine headaches, *id.* at 26 - 27, particularly as to her testimony that these "migraine headaches are persistently accompanied [by] nausea; sensitivity to light, sounds, smells; or other complicating factors." [Tr. 18]. Plaintiff also contends there is no support in the record for the ALJ's conclusion that Plaintiff's migraine headaches would cause her to miss more than a half but less than one day of work per month [Doc. No. 14, p. 27]. Finally, Plaintiff complains the ALJ erred by failing to obtain vocational testimony regarding the vocational impact of the limitations caused by her particular migraine headaches. *Id.*

In response to Plaintiff's first contention, the Commissioner maintains the ALJ properly evaluated the credibility of Plaintiff's complaints regarding the severity and limiting effects of her migraine headaches [Doc. No. 15, pp. 11 - 15]. As to her contention with respect to the frequency and length of her migraine headaches, the Commissioner again argues that Plaintiff's claims are entirely subjective and properly discounted by the ALJ's credibility analysis and, further, that "the ALJ was entitled to rely upon Dr. Haynes's expert testimony that Plaintiff's headaches would prevent her from working on less than a monthly basis." *Id.* at 14. No separate argument is made by the Commissioner as to any error regarding the vocational evidence on which the ALJ relied. Central to each of these issues is the testimony of Dr. Haynes at the administrative hearing and the ALJ's interpretation of that testimony.

In responding to the ALJ's opening question about what physical impairments Plaintiff might have, Dr. Haynes testified it was his opinion "that she seems to have migraine headaches and those can certainly be very significant and it's - - the problem is that it's pretty subjective and I don't think there's a listing for a migraine and I don't think she meets or equals any other neurological listings." [Tr. 69 - 70]. When asked by the ALJ whether based upon his review of the evidence and what he had heard at the hearing, Dr. Haynes "would . . . see any sort of function limitation resulting from the claimant's migraine headaches," the following dialogue took place:

A     I think that if she does have a migraine she -- most people, it's pretty common -- if they're the more severe kind that they do often want to

> curl up in a dark room, and so, I would say that occasionally she might be -- she might be impaired and probably not able to function very well doing anything.
>
> Q    Okay. Do you have an opinion of how often that occasional burst might be?
>
> A    Well, we have the claimant's testimony and I have the emergency room records which are pretty extensive and I counted up 11 trips to the emergency room in the year 2010 and -- or -- yeah, that was 2010 -- and I counted up somewhat less than a monthly frequency before that so I guess that's what I would offer. I guess, it looks like she goes in and gets a shot of Toradol and goes home.
>
> Q    Okay. And do the medications appear to be effective?
>
> A    Well, they always send her home with this Toradol and with the Phenergan and so I guess it is effective.

[Tr. 70 -71]. On questioning by Plaintiff's representative, Dr. Haynes was asked whether there was any objective medical test to "show migraine headaches[.]" [Tr. 71]. Dr. Haynes responded, "It's hard to see a migraine. I think in a severe case of migraines, it's - - you can see a person nauseated and vomiting and I guess I'd call that objective." [Tr. 72].

Thus, with regard to "any sort of function limitation resulting from the claimant's migraine headaches," [Tr. 70], it was Dr. Haynes's opinion that on those days on which Plaintiff has a severe migraine headache, "she might be impaired and probably not able to

9

function very well doing anything." *Id.* When asked by the ALJ how often what he termed "that occasional burst" might occur, *id.,* Dr. Haynes proffered – based upon Plaintiff's testimony and his review of the emergency room records – "11 trips to the emergency room in the year 2010" and "somewhat less than a monthly frequency before that." [Tr. 71]. He also testified that Plaintiff apparently received effective medication treatment at the emergency room [Tr. 71].

The ALJ construed this testimony as a finding by Dr. Haynes that "the claimant experiences a severe migraine headache on the average of less than one day per month." [Tr. 18]. His RFC, in turn, restricted Plaintiff to work where she could "be absent from the workplace, on average, more than ½ day per month, but less than 1 day per month." [Tr. 17]. Plaintiff claims these findings are not well-supported because the emergency room treatment records reflect her report that she had already been suffering from a migraine – for a varying number of days – before seeking treatment [Doc. No. 14, p. 27]. Moreover, she maintains she also experienced migraines on other occasions. *Id.* In response, the Commissioner contends Plaintiff's "argument . . . is premised *entirely* upon her own subjective statements regarding the frequency of her headaches" and the ALJ properly "declined to credit her testimony." [Doc. No. 15, p. 14].

In support of this position, the Commissioner argues, for example, "the treatment notes show that, despite her allegedly incapacitating headaches, Plaintiff showed little in the way of functional limitations during her alleged attacks." *Id.* He then points to specific treatment records, some of which are records of treatment on the days of her so-called

"bursts." *Id.*[3] To the extent the Commissioner is suggesting the ALJ could properly find through a credibility assessment that even those migraines experienced by Plaintiff on the days of her "bursts" were not as functionally limiting as she maintained, such a claim is flawed.

The ALJ unquestionably relied on Dr. Haynes's testimony that Plaintiff was functionally unable to work on the days of her "bursts" in order to support his determination that she would miss, on average, more than one half but less than one full day of work per month. There is no indication in the decision this determination was grounded on anything other than that testimony. The determination having been made that Plaintiff suffered from a work-limiting severe migraine headache on the days of specific emergency room treatment – for example, the eleven treatments in 2010,[4] – a credibility finding by the ALJ interpreting those same treatment records to show, for example, those same eleven migraine headaches were not as severe as Plaintiff claims contradicts that determination. Consequently, even if the ALJ properly discredited Plaintiff's claim that she suffered from disabling migraine headache symptoms on many more days than on those precise days on which she actually received what Dr. Haynes identified as responsive emergency room treatment for the

---

[3]*See infra* pp. 13-14.

[4]Contrary to the Commissioner's claim, Plaintiff has not "concede[d] that she sought treatment for migraine headaches on approximately eleven occasions between May 2008 and April 2011[.] [Doc. No. 15, p. 13]. What Plaintiff said is that "[t]he record summarized above shows that between [Plaintiff's] alleged onset of May 2008 and the last record from April 2011, [Plaintiff] received treatment for migraine headaches on *more* than 11 occasions." [Doc. No. 14, p. 27 (emphasis added)]. More to the point, the medical evidence of record speaks for itself.

impairment, the ALJ cannot properly discredit those symptoms on those eleven days in 2010 and on a "somewhat less than a monthly frequency before that[.]" [Tr. 71]. Any claim by the Commissioner that the ALJ "adequately account[ed]" for these *particular* migraine headaches through a proper assessment of Plaintiff's credibility is unavailing [Doc. No. 15, pp. 11 - 14].

In further responding to Plaintiff's contention that there is no support in the record for the ALJ's conclusion that Plaintiff's recurrent migraine headaches would cause her to "miss more than ½ day of work a month but less than 1 day of work per month," [Doc. No. 14, p. 27], the Commissioner argues "the ALJ was entitled to rely upon Dr. Haynes's expert testimony that Plaintiff's headaches would prevent her from working on less than a monthly basis." [Doc. No. 15, p. 14]. Without question, the ALJ was entitled to rely upon his expert's testimony. Nonetheless, contrary to both the ALJ and the Commissioner's construction of that testimony, Dr. Haynes did not "*testif[y]* that his review of the emergency room treatment notes and the other medical evidence of record showed that the claimant experiences a severe migraine headache on the average of less than one day per month." [Tr. 18 (emphasis added)]. This is not the case, and it is an erroneous factual conclusion by the ALJ.

Instead, Dr. Haynes *testified* that Plaintiff experienced a so-called functionally limiting "burst" on eleven occasions in 2010 and on less than a monthly basis prior to that time [Tr. 70 - 71]. It was the ALJ and not Dr. Haynes who quantified the days on which Plaintiff could not work as "on the average of less than one day per month." [Tr. 18]. Even assuming this is a mathematically correct computation and the ALJ intended to convey that

12

he was *interpreting* Dr. Haynes's testimony, an examination of the specific medical records identified in Dr. Haynes's testimony demonstrates that any such interpretation ignores the unpredictable and sporadic nature of Plaintiff's disabling headaches.

The medical records show Plaintiff received headache-related emergency room treatment on eleven specific days in 2010: 1) February 13, 2010 [Tr. 832 - 838]; 2) April 16, 2010 [Tr. 825 - 831]; 3) May 6, 2010 [Tr. 818 - 824]; 4) May 29, 2010 [Tr. 811 - 817]; 5) June 28, 2010 [Tr. 804 - 810]; 6) September 9, 2010 [Tr. 789 - 795]; 7) October 9, 2009 [Tr. 856 - 862]; 8) October 30, 2010 [Tr. 782 - 788]; 9) November 24, 2010 [Tr. 763 - 769]; 10) November 29, 2010 [Tr. 756 - 762]; and, 11) December 21, 2010 [Tr. 749 - 755]. Unquestionably, then, these are the records of treatment of the eleven "bursts" in 2010 to which Dr. Haynes was referring. With respect to the medical evidence of headache-related emergency room treatment prior to that time, it is impossible to know precisely what records Dr. Haynes had in mind. Nonetheless, the prior treatment records closest in time to those of the 2010 treatments are from December 1, 2009 [Tr. 846 - 851] and December 22, 2009 [Tr. 839 - 845]. Both of these sets of records reflect a migraine diagnosis, reports of nausea and of treatment, and both are of a similar nature to the 2010 records.[5]

---

[5] In remanding this matter for a new decision, the Appeals Council determined the evidence before it at the time of the remand "indicates that the claimant was seen numerous times in the emergency room for treatment of migraine headaches over the course of more than 12 months since the alleged onset date." [Tr. 119]. The cited medical evidence from December 2009 through December 2010 likewise reflects the ongoing emergency room treatment of Plaintiff's migraine headaches over the course of more than twelve months.

It is noted that similar treatment notes are also of record for January 26 and 27, 2011
(continued...)

Thus, the specific medical evidence identified by Dr. Haynes as evidence of Plaintiff's functionally-limiting "bursts" shows the following: the migraine headaches do not occur every month, sometimes they occur once a month and, sometimes, as they did in December of 2009 and in May, October, and November of 2010, they occur twice a month. For purposes of assessing what Plaintiff can still do despite her impairments, the difference between, on the one hand, considering the sporadic and random nature of Plaintiff's migraine headaches as demonstrated by the medical evidence relied upon by Dr. Haynes and, on the other, averaging the number of treatment days to fit into a predictable monthly pattern, is significant vocationally.

When asked by the ALJ what the vocational impact would be if an unskilled worker missed one day of work a month to go to the emergency room due to a migraine headache, the vocational expert testified "they wouldn't be able to maintain employment." [Tr. 95]. The vocational expert went on to agree with the ALJ that "if it's more than one day a month, there'd be no question." [Tr. 95]. Based upon the ALJ's conclusion that Dr. Haynes testified – actually or as interpreted – "that the claimant experiences a severe migraine headache on the average of less than one day per month,"[Tr. 18], a conclusion which informed Plaintiff's RFC [Tr. 17], Plaintiff could not meet either of the thresholds established by the vocational

---

[5](...continued)
[Tr. 739 - 748], March 13, 2011 [Tr. 732 - 738], March 15, 2011 [Tr. 725 - 731] and, March 16, 2011 [Tr. 719 - 724]. Without explanation, Dr. Haynes made no reference to this treatment. Had the 2011 treatment evidence been considered along with the 2010 treatment evidence, the number of days on which Plaintiff would have been unable to work – "on average" – over a twelve month period might have exceeded the limitations of her RFC [Tr. 17].

expert because her headaches had been averaged into a predictable pattern. A different result is possible had the ALJ's RFC and hypothetical questioning reflected the limitations shown by Dr. Haynes's testimony: an unskilled worker who randomly and unpredictably misses, at times, up to two days of work per month.

Contrary to the Commissioner's argument that Plaintiff's RFC is supported by the record because "the ALJ was entitled to rely upon Dr. Haynes's expert testimony that Plaintiff's headaches would prevent her from working on less than a monthly basis[,]" [Doc. No. 15, p. 14], the ALJ's RFC does not find support from an interpretation of that expert testimony which ignores the fact that Plaintiff's severe migraine headaches were consistently unpredictable.

Consequently, as Plaintiff maintains, the ALJ's finding that "because of her recurrent headaches [Plaintiff] would miss more than ½ day of work a month but less than 1 day of work a month" is not supported by the record [Doc. No. 14, p. 27]. Remand is required for further proceedings consistent with this report.

### **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded for further proceedings.

The parties are advised of their right to object to this Report and Recommendation by February 18, 2013, in accordance with 28 U.S.C. §636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein.

*Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 28th day of January, 2013.

_____
BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE